UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

RONALD BLAKE,

             Petitioner,

v.                                         No. 14-CV-11845-IT

SEAN MEDEIROS,

             Respondent.

**REPORT AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS
CORPUS PURSUANT TO 28 U.S.C. § 2254 (Dkt. No. 1)**

CABELL, U.S.M.J.

## I.   INTRODUCTION

Ronald Blake ("Blake" or "the petitioner") is currently
incarcerated at the Massachusetts Correctional Institution in
Norfolk following his 2007 state court conviction for armed assault
with intent to murder, armed robbery, assault and battery, and
assault and battery with a dangerous weapon. He seeks habeas
relief under 28 U.S.C. § 2254, on two grounds. He argues first
that the trial court erred in refusing to suppress evidence of an
impermissibly suggestive identification procedure. He argues also
that his trial counsel provided ineffective assistance by failing
to adequately investigate or challenge the prosecution's timeline
of events. (Dkt. No. 1). After careful consideration of the

1

records, it is recommended that the Petition for Writ of Habeas Corpus be DENIED.

## II.  RELEVANT BACKGROUND

### A. **The Underlying Crime**

As summarized by the Massachusetts Appeals Court, the jury could have found the following facts:[1]

> The convictions in these cases arose from the beating and robbery at knife point of Gregory Kendrick in the early morning hours of June 3, 2006.  Kendrick was employed as a cab driver by Bluebird Cab Company located in New Bedford.  Based on the evidence presented at trial, the jury could have found that Kendrick picked up the defendants just before 5:00 A.M. and drove them to Reynolds Street in New Bedford.  Kendrick estimated that the ride took between seven and eight minutes.  Upon arriving at the Reynolds Street address, the defendants robbed Kendrick and then drove the cab to Sullivan Drive in Westport where they left Kendrick on the side of the road, bleeding from a stab wound to the arm.  Kendrick managed to seek assistance at a nearby fire station and was transported to [St. Luke's hospital in New Bedford].  Meanwhile, a security camera at the Fall River Pier recorded the arrival of Kendrick's cab containing two men at 5:11 A.M. and their departure on foot several minutes after, wearing clothing similar to the defendants' at the time of arrest.  The cab was later found parked behind the Water Street Café, at 36 Water Street in Fall River.

*Commonwealth v. Gomes*, Nos. 10-P-2235, 12-P-767, 2014 WL 470361, at *1 (Mass. App. Ct. February 7, 2014).

---

[1] In habeas proceedings filed by a prisoner in state custody, "a determination of factual issues by the State court should be presumed to be correct."  28 U.S.C. § 2254(e)(1).  The petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*  Although Blake does in one instance noted below question whether the identification procedure occurred later than the prosecution claims it did, he does not here challenge the underlying facts themselves.

B. **The State Court Proceedings**

On July 14, 2006, the grand jury indicted Blake and a co-defendant, Jorge Gomes, on charges of: (1) armed assault with intent to murder; (2) armed robbery; (3) assault and battery; (4) assault and battery with a dangerous weapon; and (5) kidnapping. (Dkt. 15, Volume I, S.A. 4; hereinafter [S.A. [page]).[2]

On May 24, 2007, the petitioner moved to suppress an out-of-court identification that was based on a single photograph. (S.A. 5, 78-84). The relevant facts as found by the trial court on this issue (and as subsequently implicitly adopted by the Appeals Court (S.A. 127)) are as follows:

> After leaving the scene, [Westport Police Seargent] Sullivan accompanied by Westport Police Sergeant Cestidio ("Cestidio"), proceeded to St. Luke's Hospital in New Bedford and spoke to the victim. He was in contact and alert. He confirmed the description of the assailants as one dark skinned and one light skinned. The officers then went to the Bluebird Cab Company and determined that the victim's last pick up was at 103 Ruth Street in New Bedford. They then proceeded to Ruth Street. Before they entered 103 Ruth Street, an unknown older woman on the sidewalk told them that they should check the third floor. The identity of this person was not subsequently determined.

> 103 Ruth Street was a three story residential building with an apartment on each floor and a common

[2] The pertinent state court documents are contained in the Commonwealth's Supplemental Answer, which is separated into three volumes. (Dkt. 15). The first volume contains various documents bates stamped sequentially, and for ease of identification will be cited as (S. A. [page]). Volumes two and three contain the transcripts from the trial and will be cited as Dkt. No. 15, Volume II, Transcript Volume [], pg. [], (hereinafter V. II, Tr. V.[], pg.[]) and Dkt. No. 15, Volume III, Transcript Volume [], pg.[] (hereinafter V. III, Tr. V.[], pg.[]).

entry way.  The officers entered the building and walked up to the third floor landing, knocked on apartment 3 and a female opened the door.  The female, who identified herself as "Paula," was later identified as Paula Calisto.  She said she was the tenant of the apartment.

The officers asked Paula if there was anyone else in the apartment, to which she answered, "No one." Cestidio asked her what was behind a closed door he could see from the entry way.  She said she had a friend inside.  The officers asked if they minded if they could check, and she replied, "Not at all."  Upon the door being opened, the officers found the defendants sleeping on a large bed.  They were dressed.  The officers woke up the defendants, but it took them about 10 minutes to rouse themselves effectively from sleep.

The defendants and their clothing matched the general description Sullivan had been given of the assailants.

After the defendants pulled themselves together, the officers spoke with them separately for about 15-20 minutes.  Cestidio spoke with Gomes and Sullivan spoke with Blake.

Asked what he had done the prior night, Blake said that they had gone to a couple of friends' houses.  Asked by Sullivan whether they had taken a cab, Blake answered affirmatively.

No Miranda warnings were given, Sullivan stated, because the defendants at that point were not in custody.

The defendants were then asked whether it was okay for the officers to take their pictures.  They consented, and digital pictures were taken.  The officers then left the premises and returned to the Westport Police headquarters, where the digital images were downloaded and printed as 8½" x 11" color images.

Meanwhile the victim was released from the hospital and was transported to the Westport P.D. When the victim arrived at the police station around 1 p.m., Sullivan showed the victim the two photographs and asked him if he knew the individuals. The victim immediately responded, "Those are the two that attacked me."

As to why he did not arrange an array of photos before showing the two pictures to the victim, Sullivan said that to do so would have taken about an hour to an hour and a half, and he believed that to wait would have compromised the investigation. The defendants were not in the Westport Police's "in-house" photo ID system. Sullivan would have to have accessed the Registry of Motor Vehicles system. The Registry's and the Westport in-house photos have different background colors to the photo images obtained of the defendants, so the fresh photos of the defendants would have stood out.

Once the victim made the identification, the Westport officers went to the New Bedford Police Department for assistance and then proceeded to 103 Ruth St. to arrest the suspects. At 103 Ruth St., officers knocked and Paula once again answered the door and let them in. Police found only Blake in the apartment with Paula. Blake was arrested. Gomes was arrested later.

*Commonwealth v. Blake*, Nos. BRCR2006-0851, BRCR2006-0852, 2007 WL 3104405, at *1-2, (Mass. Sup. Ct. August 10, 2007).

On August 10, 2007, the trial court denied the motion to suppress. *Id*. at *1. The court concluded that the single photo procedure was not unreasonable under the circumstances because exigent circumstances warranted acting quickly:

Here, the police had good cause to proceed with a one on one show up. At that juncture two armed highjackers were at large who had stabbed a kidnapped victim, under circumstances consistent with an intent to kill him.

The police acted reasonably in concluding that a prompt identification by the victim using fresh photo images was necessary to allow police to investigate the crime with speed, efficiency and accuracy. Had the victim not identified the defendants in the pictures, the police would have been able to exclude them as suspects and follow other leads to get the actual perpetrators.

Additionally, although the police could have created a wider photogenic array, there would have been delay of a least an hour to do so. Given the proximity in time between the crime and when the police took the pictures of the suspects, it was likely that their physical appearance caught in the photos was the same as it had been at the time of the crime. Thus, it was also likely that if the suspects were in fact the assailants, the victim would have been able most reliably to identify them at that juncture. The more time passed, the more remote the victim's memory would become and the more likely that he be exposed to "other images", which would have increased the risk of a false identification.

*Id.* at *5.

On November 30, 2007, the jury convicted the petitioner and Gomes on all counts. (S.A. 7).

The petitioner appealed his conviction *inter alia* on the ground that the trial judge erred in refusing to suppress evidence of the identification. (S.A. 39). On December 31, 2010, the Massachusetts Appeals Court affirmed his conviction after finding that the identification procedure did not violate his due process rights. *Commonwealth v. Blake*, No. 09-P-1501, 2010 WL 5464847 (Mass. App. Ct. December 31, 2010). The Appeals Court reasoned that "even were the defendant able to . . . show that the identification procedure was unnecessarily suggestive," he still could not prevail because the judge could properly find (as he

did) that the police had a good reason to conduct the showup in the way that they did. The situation was urgent, and prompt identification would be fairly deemed necessary in the circumstances." *Id.* at *1 (*citing Commonwealth v. Austin*, 421 Mass. 357, 361-362 (Mass. 1995)). On March 31, 2011, the Massachusetts Supreme Judicial Court (SJC) denied the petitioner's request for further appellate review. *Commonwealth v. Blake*, 459 Mass. 1107, 944 N.E.2d 1043 (Table) (Mass. March 31, 2011).

On January 27, 2011, shortly after the Massachusetts Appeals Court affirmed the petitioner's conviction, and just before the SJC denied his request for further review, the petitioner moved in the superior court to join Gomes' motion for a new trial. (S.A. 328). The petitioner also moved separately for a post-verdict required finding of not guilty or a new trial. (S.A. 339). On November 28, 2011, the superior court denied both motions. (S.A. 220-234). On February 7, 2014, and following appeals by both Gomes and the petitioner, the Appeals Court affirmed the superior court's rulings, and the SJC subsequently denied the request for further appellate review. *Gomes*, 2014 WL 470361, at *3; *Blake*, 467 Mass. 1106, 6 N.E.3d 547 (Table) (Mass. April 2, 2014).

## C. **The Habeas Petition**

On April 28, 2014, the petitioner filed the present habeas petition. It asserts four claims for relief. Paraphrasing, Claim One alleges that the single photo identification procedure the

7

officers used was unnecessarily suggestive and violated the petitioner's right to due process. Claim Two alleges that there was insufficient evidence to prove the petitioner's guilt. Claim Three alleges that the prosecutor committed misconduct. Finally, Count Four alleges that the petitioner's trial counsel provided ineffective assistance by failing to successfully challenge the prosecution's offered timeline of events.

Since filing his petition, however, Blake has apparently abandoned Claims Two and Three. He does not address either claim in his memorandum and he labels the first and fourth claims as "Ground One" and "Ground Four," respectively, suggesting that he knew that he was omitting Claims Two and Three, and meant to omit them. (Dkt. No. 28). Following suit, the respondent's opposition similarly addresses only Claims One and Four and eschews any treatment of Claims Two and Three. (Dkt. No. 34). Consequently, this court views Claims Two and Three as waived and does not address them further here. *See Perkins v. Russo*, No. 02-10460-MLW, 2007 WL 2507741, at *3 (D. Mass. August 31, 2007); *see also Smiley v. Maloney*, No. 01-11648-GAO, 2003 WL 23327540, at *15 (D. Mass. October 31, 2003), aff'd, 422 F.3d 17 (1st Cir. 2005) (finding claim waived where "petitioner has not, in his Memorandum of Law in support of the petition, advanced any argument, much less reasoned argument, on this point").

## III. DISCUSSION

### A. General Standard of Review in Habeas Proceedings

The standard of review to be applied to a habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts .... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

*Bell v. Cone,* 535 U.S. 685, 694 (2002).

"Clearly established Federal law" refers to the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision on the merits. *Greene v. Fisher*, 565 U.S. 34, 39 (2011); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). "[C]learly established law signifies the holdings, as opposed to the dicta, of [the United States Supreme]

Court's decision." *Howes v. Fields*, 565 U.S. 499, 505 (2012) (*quoting Williams v. Taylor*, 529 U.S. at 412; internal quotations omitted).

A state court's decision is "contrary to" clearly established federal law if: (1) it applies a rule that contradicts governing Supreme Court law; or (2) it "confronts a set of facts ... materially indistinguishable" from a decision of the Supreme Court but reaches a different result. *See Early v. Packer*, 537 U.S. at 8 (citation omitted); *Williams v. Taylor*, 529 U.S. at 405–06. A state court's decision "involves an unreasonable application of [Supreme Court] precedent if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. at 407 (citation omitted).

A state court's decision is an unreasonable application of clearly established federal law if it is objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520-521 (2003). An "unreasonable application is different from an incorrect one." *Id.* In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required." *McCambridge v. Hall,* 303 F.3d 24, 36 (1st Cir. 2002) (en banc). This increment "need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of

the federal court." *Id.* Thus, a habeas petitioner "must do more than merely identify an incorrect result." *Jackson v. Coalter,* 337 F.3d 74, 81 (1st Cir. 2003). In short, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. 362, 411 (2000).

Even where the habeas court finds that the state court committed an error, habeas relief is only appropriate if the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-638 (1993). In other words, habeas relief cannot be granted for "harmless" errors, which are defined as those errors that did not impact the verdict.

Additional information regarding the standard of review is provided as appropriate in discussing Blake's particular claims.

**B.  Claim One: The Showup Identification**

Blake claims that his due process rights were violated when the trial court refused to suppress evidence of his out-of-court identification based on a single photograph. Blake is not entitled to habeas relief on this claim because he cannot show that the Appeals Court's resolution of this claim was contrary to clearly

established federal law, or involved an unreasonable application thereof.

Standard of Review

The standard of review in claims of this nature is governed by *Simmons v. United States*, 390 U.S. 377 (1968). Under *Simmons*, Blake must show: "(1) that the identification procedure was impermissibly suggestive and (2) that in the totality of the circumstances, a likelihood of irreparable misidentification exists." *DeLong v. Brady*, 723 F. Supp. 2d 376, 394 (D. Mass. 2010); *see also Manson v. Brathwaite*, 432 U.S. 98 (1977) (noting that "[j]uries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature" and finding that evidence should not be suppressed where a suggestive identification procedure did not, under the totality of the circumstances, create a substantial likelihood of irreparable misidentification).

Analysis

The Appeals Court relied on its own precedent and applied a standard of review similar to the one established by the Supreme Court in *Simmons*. *See Blake*, No. 09-P-1501, 2010 WL 5464847, at *1 n.2 ("We acknowledge that although one-on-one identifications are generally disfavored, they do not raise due process concerns unless it is determined that they are 'unnecessarily suggestive

and conducive to irreparable mistaken identification.'") (*quoting Commonwealth v. Martin*, 447 Mass. 274, 279-280 (2006)).[3]

As noted, the Appeals Court found that, even assuming Blake could satisfy the first prong of the test and show the identification procedure was unnecessarily suggestive, it did not raise due process concerns because the officers' actions were

---

[3] Massachusetts law is in fact more favorable to a defendant than is federal law: the simple fact that the identification was made pursuant to an unnecessarily suggestive procedure suffices for suppression of the evidence. In other words, under Massachusetts law, a defendant must only show the first of the two *Simmons* prongs. *See Commonwealth v. Walker,* 460 Mass. 590, 599 n.13 (2011) ("Where the defendant satisfies this burden, the out-of-court identification is per se excluded as a violation of the defendant's right to due process under art. 12 of the Massachusetts Declaration of Rights."). "Whether a suggestive identification procedure is "unnecessarily" or "impermissibly" suggestive, involves inquiry whether good reason exists for the police to use a one-on-one identification procedure, bearing in mind that [the SJC] has said that "[e]xigent or special circumstances are not a prerequisite to such confrontations." *Commonwealth v. Austin*, 421 Mass. 357, 361 (1995) (internal citations and quotation marks omitted).

"In contrast, under the Fourteenth Amendment to the United States Constitution, a motion judge must apply a two-step analysis to the question of admissibility. The judge asks first whether the eyewitness identification was obtained by a police procedure that was unnecessarily suggestive. If it was, the judge then asks whether, notwithstanding the unnecessarily suggestive procedure, the eyewitness identification was reliable under the totality of the circumstances. Because reliability is the linchpin, the identification, if found reliable, is admissible even where obtained through an unnecessarily suggestive procedure. The United States Supreme Court expressly rejected the per se rule of exclusion as going too far since its application automatically and peremptorily, and without consideration of alleviating factors, keeps evidence from the jury that is reliable and relevant.... [T]he standard for the admissibility of an identification under the Massachusetts Constitution is more favorable to a defendant than the standard under the United States Constitution ...." *Walker,* 460 Mass. at 599 n.13 (internal citations and quotation marks omitted).

Because the Massachusetts standard is more protective of defendants than is its federal counterpart, then a ruling that an identification procedure complied with the state standard means that the procedure necessarily complied with the federal constitutional standard as well. Accordingly, this court may still look to the Appeals Court's state law analysis as it evaluates the merits of Blake's federal constitutional claim in this habeas proceeding. *See Cavitt v. Saba*, 57 F. Supp. 3d 81, 92 n.10 (D. Mass. 2014).

justified based on exigent circumstances. *Blake*, 2010 WL 5464847 at *1 (*citing Austin*, 421 Mass. at 461). Notwithstanding Blake's protestations to the contrary, there is no basis to question the state court's finding. The police were trying to locate and apprehend two armed highjackers who had stabbed a kidnapped victim, ostensibly with the intent to kill him. Given the clear and present danger posed by their continued presence in the community, and the need to focus the search as quickly as possible to locate and apprehend them, conducting the identification procedure quickly was necessary under the circumstances to allow the police to determine whether the petitioner and Gomes were potentially involved, and if not to continue pursuing other leads to find the true still-at-large assailants.

To be sure, Blake contends that Kendrick testified at trial that the identification procedure did not occur until at least a full day later, calling into question the continued legitimacy of the trial court's pre-trial finding that exigent circumstances existed to justify the procedure. Even assuming the circumstances surrounding the identification procedure were not plainly exigent, that fact would not standing alone categorically render the procedure impermissibly suggestive under Art. 12. *See Austin* at 361 (holding "[e]xigent or special circumstances are not a prerequisite to such confrontations," but are instead one factor among many to determine whether there was good reason for such

confrontations).  In any event, Kendrick's testimony, in context, hardly provides a basis to revisit the trial court's findings and rulings.  For one, the trial court (as well as the jury) might have fairly reasoned that Kendrick, like any witness, could simply have been mistaken in his recollection of when the procedure occurred.  Moreover, Kendrick's testimony must be balanced and assessed against the force of countervailing testimony that the identification procedure occurred just hours after the incident. Finally, Blake cannot seriously be heard to advance this argument with much force here where his tack at trial was to argue inappositely that Kendrick had credibility issues and was not to be believed.

Even assuming, *arguendo*, that the identification procedure was unnecessarily suggestive given the totality of the circumstances, any error in denying the petitioner's suppression motion was harmless.  Under the harmless error standard articulated in *Brecht v. Abrahamson*, 507 U.S. 619 (1993), habeas relief is granted only if the error "had a substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. at 623.  Even without evidence of Kendrick's out-of-court identification, there was ample other evidence adduced at trial to show that Blake and Gomes were the two men who robbed the victim.  Among other things, the police found the two defendants at a location at Ruth Street which the cab company said

was the victim's last pickup, a security camera at the Fall River Pier recorded the arrival of the victim's cab containing the two defendants, and the security camera also recorded the two defendants departing "on foot several minutes after, wearing clothing similar to the defendants' at the time of their arrest" and similar to the "general description Sullivan had been given" by the victim. (V.III, Tr. V.4 p. 19-22, 27, 57-58, 79-80, 153-154, 196-198; Tr. V.5, p.48-49, 53-54, 58-59). In addition, Kendrick identified the petitioner in court as the one who attacked him. (V. II, Tr. V.II, p.181-82). Consequently, as there was ample evidence to show that Blake and Gomes were the two men who robbed the cab driver, Blake cannot show that admitting the out-of-court identification evidence had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson,* 507 U.S. at 623.

### Claim Four: Ineffective Assistance of Counsel

The petitioner argues that his trial counsel provided ineffective assistance by failing to fully investigate and challenge as physically implausible the prosecution's suggested timeline of events. In affirming the trial court's denial of the petitioner's motion for a new trial on this ground, the Massachusetts Appeals Court recounted the salient facts as follows:

The defendants argue that trial counsel were
ineffective for failing to offer evidence to contradict
the Commonwealth's timeline of the events.
Specifically, the defendants allege that, as
demonstrated by their investigator, it is not possible
to travel the distance involved within the time period
suggested by the Commonwealth. According to the
defendants, independent evidence which would have cast
doubt on the Commonwealth's timeline was important
because, among other reasons, such evidence would have
undermined Kendrick's credibility, and would have
provided additional support for the defense theory that
Kendrick had fabricated the allegations to conceal his
own wrongdoing.

*Gomes*, 2014 WL 470361, at *2. The Massachusetts Appeals Court

went on to analyze the claim as follows:

Where a motion for a new trial is based on
ineffective assistance of counsel, the defendant bears
the burden of proving entitlement to a new trial by
showing that the behavior of counsel fell below that of
an ordinary, fallible lawyer and that such failing
'likely deprived the defendant of an otherwise
available, substantial ground of defence. *Commonwealth
v. Comita*, 441 Mass. 86, 90 (2004) quoting from
*Commonwealth v. Saferian*, 366 Mass. 89, 96-97 (1974). .
. .

Trial counsel for both defendants testified at the
postjudgment motion hearing. Based on their testimony,
the judge's review of the record, and his knowledge of
the trial, he found that the evidence in question would
have provided minimal additional impeachment of Kendrick
and posed the very real risk of giving the Commonwealth
the opportunity to shore up its case on rebuttal. Both
defense attorneys testified that while it was apparent
to them that the Commonwealth's timeline was
questionable, they chose to attack that evidence through
cross-examination. The judge described their decision
as "prudent" especially in light of the fact that the
Commonwealth could have produced telephone records and
other evidence on rebuttal to support its theory.
Moreover, as the judge also noted, trial counsel had
successfully demonstrated that Kendrick was not credible
on a number of key points. As the judge correctly
observed, strategic decisions will constitute

ineffective assistance only when "manifestly unreasonable." *Commonwealth v. Pillai*, 445 Mass 175, 186 (2005). The judge's conclusion that the defendants' trial attorneys' decision to forego presenting evidence demonstrating the implausibility of the Commonwealth's timeline was not unreasonable is amply supported by the record. Thus, there was no abuse of discretion in concluding that the defendants were not deprived of effective assistance of counsel on this basis.

*Id.* at *1-2.

Standard of Review

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test for showing ineffective assistance of counsel. In order to succeed under *Strickland*, a defendant must first demonstrate that counsel's performance was deficient, requiring a showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment. *Strickland,* 466 U.S. at 688. Second, the defendant must show that the deficient performance prejudiced the defense by showing that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable. *Id.* at 692. However, "[b]ecause of the difficulties inherent in making the valuation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

trial strategy.'" *Id.* at 689 (*quoting Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Massachusetts reviews ineffective assistance of counsel claims pursuant to *Commonwealth v. Saferian*, 366 Mass. 89 (Mass. 1974). The *Saferian* standard asks "whether there has been serious incompetency, inefficiency, or inattention of counsel - behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer - and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defense." *Saferian,* 366 Mass. at 96. Whether counsel should call a particular witness is a strategic decision and as such will constitute ineffective assistance only if it is "manifestly unreasonable," meaning lawyers of ordinary training and skill in the criminal law would not consider the decision competent. *Commonwealth v. Pillai*, 445 Mass. 175, 186-187 (Mass. 2005) (*quoting Commonwealth v. Levia*, 385 Mass. 345, 353 (1982)).

The First Circuit has determined that the *Saferian* standard is the "functional equivalent" of the *Strickland* standard for ineffective assistance of counsel. *See Lynch v. Ficco,* 438 F.3d 35, 48 (1st Cir. 2006); *Mello v. DiPaulo*, 295 F.3d 137, 144 (1st Cir. 2002); *see also Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994) (noting "the SJC itself . . . has concluded that if their state's test is satisfied, 'the federal test is necessarily met as

well.'"). Therefore, even though the state court addressed the claim solely under the state law standard, it shall be presumed the federal law adjudication was subsumed within the state law adjudication. *See Teti v. Bender*, 507 F.3d 50, 56 (1st Cir. 2007).

The Court's task under the deferential standard of review set forth in 28 U.S.C. § 2254(d) is to determine whether the state court's application of *Strickland,* subsumed within the application of *Saferian,* was unreasonable. *See* 28 U.S.C. § 2254(d)(1); *Shuman v. Spencer*, 636 F.3d 24, 31 (1st Cir. 2011) (holding claims of ineffective assistance of counsel involve mixed questions of law and fact and are reviewed under the unreasonable application clause of 28 U.S.C. § 2254(d)(1)).

Analysis

This court discerns no error in the state court's treatment of Blake's ineffective assistance claim. The state court reasonably found that defense counsel's decision to forego presenting defense witnesses to challenge the prosecution's timeline, and instead to emphasize points counsel had already secured from the Commonwealth's witnesses on cross examination, was "prudent," particularly where the Commonwealth otherwise almost surely would have been permitted to put on rebuttal evidence further supporting Kendrick's account and the prosecution's timeline of relevant events. The Supreme Court has stated that "strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. The First Circuit has similarly noted that "[t]he decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of anticipated testimony." *United States v. Lema*, 987 F.2d 48, 54 (1st. Cir. 1993). Here, as the Appeals Court noted, trial counsel made a strategic decision to challenge the timeline evidence through cross-examination rather than by calling his own witness. This was a strategic decision that cannot be said to be unreasonable. *Phoenix v. Matesanz*, 233 F.3d 77, 84 (1st Cir. 2000) (upholding denial of habeas relief where trial counsel made progress in discrediting prosecution expert through cross-examination and decided not to call his own expert even where doing so "would probably have been helpful at trial"). As Blake advances no serious reason to call the state court's reasoning into question, he cannot show that his counsel's performance was deficient or deprived him of his right to a fair trial. In short, the claim fails.

## IV. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the petitioner's habeas petition be DENIED. The parties are hereby advised that under the provisions of Federal Rule of Civil Procedure 72(b), any party who objects to this recommendation must file specific written objections thereto with the Clerk of this

Court within 14 days of the party's receipt of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. *See Keating v. Secretary of Health and Human Servs.*, 848 F.2d 271 (1st Cir. 1988); *United States v. Emiliano Valencia-Copete*, 792 F.2d 4 (1st Cir. 1986); *Park Motor Mart, Inc. v. Ford Motor Co.*, 616 F.2d 603 (1st Cir. 1980); *United States v. Vega*, 678 F.2d 376, 378-379 (1st Cir. 1982); *Scott v. Schweiker*, 702 F.2d 13, 14 (1st Cir. 1983); *see also Thomas v. Arn*, 474 U.S. 140 (1985).


                                        /s/ Donald L. Cabell
                                        DONALD L. CABELL, U.S.M.J.

DATED:  August 28, 2017